UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SANDRA K. ANDERSON and HALEY HILL, individually and as representatives of a Class of Participants and Beneficiaries of The Iron Mountain Companies Welfare Plan,

Plaintiffs,

v.

IRON MOUNTAIN INCORPORATED,

Defendant.

Civil Action No. __________

**CLASS ACTION COMPLAINT**

Plaintiffs Sandra K. Anderson and Haley Hill (collectively, "Plaintiffs"), individually and on behalf of the Class defined below, bring this Class Action Complaint against Iron Mountain Incorporated ("Iron Mountain" or "Defendant"). Plaintiffs allege the following based on personal knowledge as to their own actions and experiences and, as to all other matters, on information and belief after an investigation that included review of the governing Plan documents, participant-facing benefit materials, regulatory notices, Iron Mountain's Forms 5500, correspondence concerning the Tobacco Surcharge Program, and publicly available corporate information.

## I. NATURE OF THE ACTION

1. Iron Mountain sponsors and administers The Iron Mountain Companies Welfare Plan (the "Plan"), an employee welfare benefit plan that provides medical and other welfare benefits to eligible employees and their dependents.

2. The Plan is an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The Plan document states that the Plan was originally effective October 1, 1999, and was amended and restated in 2020.

3. Iron Mountain's 2025 Form 5500 identifies the Plan as Plan No. 510, EIN 23-2588479, identifies Iron Mountain Incorporated as the Plan Sponsor, and identifies the Plan Administrator as the same as the Plan Sponsor. The filing reports more than 11,000 active participants during 2025.

4. As a condition of obtaining medical coverage without an additional tobacco-related premium contribution, Iron Mountain requires employees to attest to tobacco or nicotine use. Employees and covered spouses or domestic partners who are treated as tobacco or nicotine users are assessed an additional premium contribution (the "Tobacco Surcharge").

5. The amount of the Tobacco Surcharge has varied. Iron Mountain's 2024 U.S. benefits materials state that, for an employee earning less than $85,000, one covered tobacco user was assessed 1% of regular biweekly pay and two covered tobacco users were assessed 2% of regular biweekly pay. For an employee earning more than $85,000, the surcharge was $35 per paycheck for one covered tobacco user and $70 per paycheck for two.

6. For 2025, Iron Mountain changed the Tobacco Surcharge to a flat $75 per month for an employee tobacco user and $75 per month for a covered spouse tobacco user, or $150 per month if both used tobacco. Thus, the 2025 charge was $900 per year for each covered tobacco user and could reach $1,800 per year when both the employee and covered spouse used tobacco.

7. ERISA generally prohibits a group health plan from requiring an individual, as a condition of enrollment or continued enrollment, to pay a premium or contribution greater than that charged to a similarly situated individual based on a health-status-related factor. 29 U.S.C. § 1182(b)(1); *see also* 42 U.S.C. § 300gg-4(b)(1). Tobacco use is a health-status-related factor for purposes of these rules.

8. A health-contingent tobacco surcharge can avoid that general prohibition only if the program satisfies the statutory and regulatory requirements for a program of health promotion or disease prevention. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3); 29 C.F.R. § 2590.702(f)(4).

9. Among those requirements, the full reward must be available to all similarly situated individuals through a reasonable alternative standard, and plan materials describing the terms of an outcome-based wellness program must disclose the availability of the reasonable alternative standard, contact information for obtaining it, and that recommendations of an individual's personal physician will be accommodated. 29 C.F.R. § 2590.702(f)(4)(iv)-(v).

10. Iron Mountain offers Aetna lifestyle and tobacco-cessation coaching, but its written materials do not disclose that a participant who satisfies that alternative will receive the full annual reward. The 2024 materials state that a participant who completes three qualifying coaching sessions before March 31 will have the surcharge "removed going forward." They do not state that surcharge amounts already paid earlier in the Plan year will be reimbursed or credited.

11. The 2024 materials further state that, after the March 31 window, a participant may still work with a coach but, if the participant successfully quits tobacco use, the participant can identify as a non-tobacco user during the following Open Enrollment. That structure does not identify a participation-based reasonable alternative through which a continuing tobacco user can obtain the same reward for the current Plan year after the March 31 deadline.

12. The 2025 Benefits Details similarly state that an individual who missed the opportunity to update tobacco status during Open Enrollment can participate in coaching by the end of the first quarter to become eligible to have the surcharge removed. The materials do not state that amounts already collected during the Plan year will be returned.

13. Iron Mountain also failed to provide the required reasonable-alternative-standard notice in all plan materials describing the terms of the Tobacco Surcharge Program. Its participant-facing enrollment and benefits materials repeatedly describe operative terms of the program—including tobacco-use attestations, the amount and triggering conditions of the surcharge, coaching opportunities, deadlines, and procedures for surcharge removal—yet some materials do not disclose the availability of a reasonable alternative standard at all, and the surcharge-specific materials do not provide the

complete disclosures required by 29 C.F.R. § 2590.702(f)(4)(v), including that recommendations of an individual's personal physician will be accommodated.

14. A separate 2024 annual regulatory notice contains a generic LiveWell wellness notice stating that an employee unable to participate in certain health-related activities or achieve certain outcomes may request a reasonable accommodation or alternative standard. That generic notice is not tied to the Tobacco Surcharge, does not explain how a tobacco user can obtain the same full surcharge reward for the Plan year, and does not state that the participant's personal physician recommendations will be accommodated in establishing the alternative.

15. The experiences of Plaintiffs during earlier Plan years are consistent with these later written materials. Anderson knew generally that Iron Mountain offered a tobacco-cessation program, but understood the program as requiring smoking cessation; she did not know of any physician-based accommodation or any right to receive retroactive reimbursement of surcharge amounts already paid. Hill did not know of the tobacco-cessation program or a physician-based alternative at all.

16. Because Iron Mountain cannot satisfy every requirement of the wellness-program exception, Plaintiffs allege that the Tobacco Surcharge is an unlawful health-status-based premium differential under ERISA. Plaintiffs seek return of the unlawful surcharge payments and appropriate retrospective equitable and plan-wide relief arising from Defendant's past violations of ERISA.

## II. PARTIES

17. Plaintiff Sandra K. Anderson is a citizen and resident of Minnesota. She worked for Iron Mountain from approximately 1994 through March or April 2023, including as a Records Center Specialist and Data Entry Specialist at Iron Mountain facilities in St. Paul and Eagan, Minnesota.

18. Anderson received medical coverage through the Plan during the relevant period and paid the Tobacco Surcharge during the limitations period, including in 2022. The complete dates and amounts of her surcharge deductions are maintained in Iron Mountain's payroll and Plan-administration records.

19. Anderson was a casual or social smoker while she paid the Tobacco Surcharge and did not quit smoking during that period. She knew generally that Iron Mountain offered a tobacco-cessation program, but understood that the point of the program was to quit smoking and therefore continued paying the surcharge rather than participating.

20. Anderson did not know that she could seek a physician-based accommodation, did not know that the recommendations of her personal physician could be accommodated in connection with a reasonable alternative standard, and did not know that completing a lawful alternative standard could entitle a participant to the same full financial reward available to a non-tobacco user for the Plan year.

21. Plaintiff Haley Hill is a citizen and resident of Texas. She worked for Iron Mountain from approximately May 19, 2019 through late April 2021, first as an Imaging Production Specialist and later as an Imaging Production Coordinator.

22. Hill received medical coverage through Iron Mountain and paid the Tobacco Surcharge during her employment, including during the applicable limitations period. She has retained at least one paystub; the complete dates and amounts of her surcharge deductions are maintained in Iron Mountain's payroll and Plan-administration records.

23. Hill did not read or receive information that made her aware of a tobacco-cessation program through which she could avoid the Tobacco Surcharge, and she did not know of any physician-based accommodation or alternative that could be used to obtain the same reward available to non-tobacco users.

24. Plaintiffs were participants in the Plan within the meaning of 29 U.S.C. § 1002(7) during the Class Period and have colorable claims for appropriate relief arising from amounts paid in connection with Plan coverage.

25. Plaintiffs suffered concrete economic injury each time Iron Mountain required and collected a Tobacco Surcharge as a condition of their medical coverage. That injury does not depend

on whether Plaintiffs completed a cessation program or requested a physician accommodation; the injury includes the additional premium contribution itself.

26. The disclosure deficiencies also affected Plaintiffs' conduct. Had Iron Mountain clearly informed Plaintiffs that a reasonable alternative could provide the same financial reward without requiring successful tobacco cessation and that physician recommendations would be accommodated, Plaintiffs would have investigated and seriously considered those options instead of simply paying the surcharge.

27. Defendant Iron Mountain Incorporated is a Delaware corporation. Its principal executive offices are presently located in Portsmouth, New Hampshire. Iron Mountain conducts substantial and continuous business in Massachusetts, including through Iron Mountain facilities and service operations in Boston and elsewhere in Massachusetts.

28. At all relevant times, Iron Mountain sponsored, maintained, and administered the Plan. The governing Plan document provides that the Plan Administrator is the Plan's named fiduciary, and the 2025 Form 5500 identifies Iron Mountain as both Plan Sponsor and Plan Administrator.

29. Iron Mountain exercised discretionary authority and responsibility with respect to Plan administration, including authority to establish and enforce administrative rules and forms, interpret Plan terms, determine eligibility and coverage status, communicate premium-payment requirements, and administer the Tobacco Surcharge Program.

## III. JURISDICTION AND VENUE

30. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under ERISA, a law of the United States, and under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

31. This Court has personal jurisdiction over Iron Mountain because ERISA authorizes nationwide service of process and because Iron Mountain conducts substantial business and maintains facilities in Massachusetts.

32. Venue is proper in the District of Massachusetts under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Iron Mountain may be found in this District and, on information and belief, the challenged Plan and Tobacco Surcharge Program have applied to eligible Iron Mountain employees working in Massachusetts.

33. Iron Mountain maintains a Boston service center and other Massachusetts operations. Those continuous Massachusetts contacts are sufficient, independently and together with ERISA's nationwide-service provision, for Defendant to be found in this District.

## IV. FACTUAL ALLEGATIONS

### A. ERISA's Anti-Discrimination Rule and the Wellness-Program Exception.

34. ERISA § 702(b)(1) provides that a group health plan may not require any individual, as a condition of enrollment or continued enrollment, to pay a premium or contribution greater than that imposed on a similarly situated individual based on a health-status-related factor. 29 U.S.C. § 1182(b)(1).

35. The parallel provision of the Public Health Service Act likewise prohibits a group health plan or health-insurance issuer from charging a greater premium or contribution based on a health-status-related factor. 42 U.S.C. § 300gg-4(b)(1).

36. A tobacco-use premium differential is therefore presumptively prohibited unless it qualifies under the exception for a compliant wellness program. See 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(b)(2)(B).

37. For an outcome-based wellness program, the governing statute and regulation impose multiple requirements, *all of which must be satisfied*. The program must, among other things, provide an annual opportunity to qualify for the reward, satisfy limits on the size of the reward, be reasonably designed to promote health or prevent disease, make the full reward available to all similarly situated individuals through a reasonable alternative standard or waiver, and provide the required notice. 42 U.S.C. § 300gg-4(j)(3); 29 C.F.R. § 2590.702(f)(4).

38. The full-reward requirement is not satisfied merely because some alternative program exists. The alternative must permit a participant to receive the same reward made available to an individual who satisfies the initial health standard. 29 C.F.R. § 2590.702(f)(4)(iv).

39. An outcome-based wellness program must continue to provide a reasonable alternative to an individual who does not achieve the applicable health outcome. Thus, participation in a cessation program may serve as an alternative standard for obtaining the reward, but successful tobacco cessation cannot become the only route to the reward where the plan does not provide a further reasonable alternative to participants who continue to use tobacco. 29 C.F.R. § 2590.702(f)(4)(iii)-(iv).

40. The notice requirement is likewise specific. In all plan materials that describe the terms of an outcome-based wellness program, the plan must disclose the availability of a reasonable alternative standard, provide contact information for obtaining one, and state that recommendations of an individual's personal physician will be accommodated. 29 C.F.R. § 2590.702(f)(4)(v).

41. These disclosure requirements matter because a participant cannot meaningfully exercise a right that the employer never explains. A notice that merely promotes a cessation program, without explaining the same-reward alternative and physician-accommodation rights, does not provide the information required by the regulation when the same material describes the surcharge program's terms.

**B. The Plan Gives Iron Mountain Discretionary Authority Over Administration.**

42. The Plan document states that Iron Mountain maintains The Iron Mountain Companies Welfare Plan and that the Plan was created to provide health and welfare benefits for covered persons.

43. Article X of the governing Plan document addresses administration. Section 10.1 provides that the Company appoints a person, entity, or committee to serve as Plan Administrator and that, absent such an appointment, the Employer is the Plan Administrator. The provision further states that the Plan Administrator is the "named fiduciary" for ERISA purposes.

44. Section 10.2 requires the Plan Administrator to manage and carry out the Plan's operation and administration according to the Plan's terms and for covered employees' exclusive benefit.

45. Section 10.2 also requires the Plan Administrator to maintain records and governing documentation, notify eligible employees of the Plan's availability and terms, notify employees about premium-payment benefits and enrollment procedures, and prepare and file required annual reports and other documents.

46. Section 10.3 grants the Plan Administrator full discretion with respect to administration, operation, and interpretation of the Plan, including authority to require information, make and enforce administrative rules, prescribe forms, interpret the Plan, remedy ambiguities or omissions, and determine eligibility for participation, coverage, and benefits.

47. Iron Mountain's 2025 Form 5500 confirms that the Plan Administrator is the same as the Plan Sponsor, Iron Mountain Incorporated. The filing reports 11,173 participants at the beginning of 2025, 11,058 active participants at the beginning of the year, and 11,604 active participants at year end.

48. The Plan is substantially self-funded with respect to medical benefits. The 2023 Wrap Summary Plan Description states that the medical benefits are self-insured, that the Company has fiduciary responsibility for determining entitlement to self-insured benefits and authorizing payment, and that those benefits are paid out of the Company's general assets.

49. The governing Plan document similarly states that the Employer funds its share of benefits from general assets and collects employee Salary Reduction and Salary Deduction Contributions for transmission to the applicable benefits.

50. The Tobacco Surcharge is administered as an additional participant premium contribution associated with medical coverage. Iron Mountain determines who is assessed the charge,

communicates the criteria and amount, causes the charge to be withheld through payroll, and determines whether and when the charge is removed.

51. Because medical benefits are self-insured and paid from Iron Mountain's general assets, additional participant premium contributions reduce, on information and belief, the net amount of medical-plan cost Iron Mountain otherwise would bear. The precise accounting treatment and disposition of Tobacco Surcharge amounts are within Iron Mountain's exclusive possession and will be established in discovery.

52. The Plan document expressly distinguishes between Iron Mountain's employer contributions and amounts collected from employees. It defines "Salary Deduction Contributions" and "Salary Reduction Contributions" as contributions taken from a Covered Employee's salary for selected Plan benefits. Article VIII further provides that Iron Mountain pays its share of the cost of covered benefits while collecting the Covered Employee's portion through Salary Reduction Contributions and/or Salary Deduction Contributions.

53. Section 8.3 of the Plan document, captioned "Plan Assets," provides that Iron Mountain makes the payments constituting its employer contributions from its general assets and separately provides that Iron Mountain makes payments attributable to employee contributions by "collecting Employee contributions" and "transmitting such amounts to the applicable benefits described in Article IV." Iron Mountain's Form 5500 likewise identifies the general assets of the Plan Sponsor as both a funding arrangement and a benefit arrangement for the Plan.

54. Plaintiffs' Tobacco Surcharges were collected through payroll as additional employee contributions associated with medical coverage. On information and belief, those deductions were treated in connection with funding the Plan's medical benefits and thereby reduced the amounts Iron Mountain otherwise was required to fund from its general assets. The precise accounting treatment of Tobacco Surcharge deductions—including whether and when they were transmitted to the Plan or applicable medical benefit, retained or commingled with Iron Mountain's general assets, used to satisfy

Iron Mountain's own funding obligations, or otherwise disposed of—is exclusively within Defendant's possession and will be established through discovery.

**C. Iron Mountain Imposes a Tobacco- or Nicotine-Based Premium Differential.**

55. Iron Mountain requires annual tobacco-use attestations in connection with medical coverage. Its 2024 benefits materials state that all employees default to tobacco-user status and that an employee who is not a tobacco user must take affirmative action during Open Enrollment to update that status and avoid the surcharge.

56. The 2024 materials state that an employee and enrolled spouse or domestic partner pay the Tobacco Surcharge if either used tobacco or nicotine products during the preceding six months.

57. For employees earning less than $85,000 per year, the 2024 surcharge was 1% of regular biweekly pay for one covered tobacco user and 2% for two covered tobacco users. For employees earning more than $85,000, the surcharge was $35 per paycheck for one tobacco user and $70 per paycheck for two.

58. Iron Mountain's 2025 Open Enrollment materials continued to require tobacco attestations and changed the charge to a flat $75 per month per covered tobacco or nicotine user.

59. The 2025 Benefits Details state: an employee tobacco user pays $75 per month, a covered spouse tobacco user pays $75 per month, and both together pay $150 per month.

60. Accordingly, a participant treated as a tobacco or nicotine user paid hundreds of dollars more per year for the same medical coverage than a similarly situated participant treated as a non-tobacco user solely because of tobacco or nicotine status.

61. The surcharge was not a nominal administrative fee. In 2025 it amounted to $900 annually for one covered tobacco user and $1,800 annually for an employee and covered spouse who were both tobacco users.

62. Iron Mountain's own enrollment materials describe the Tobacco Surcharge as a charge associated with medical-plan cost sharing, confirming that it is an additional premium contribution imposed in connection with Plan coverage.

**D. Iron Mountain Does Not Provide a Compliant Reasonable Alternative Standard or the Full Reward.**

63. Iron Mountain offers lifestyle and tobacco-cessation coaching through Aetna. Lifestyle coaching is available for a variety of subjects, including tobacco cessation, and Iron Mountain separately promotes one-on-one Aetna tobacco-cessation coaching.

64. The existence of coaching does not resolve the legal issue. To qualify for the wellness-program exception, the alternative must provide the same full reward that is available to a similarly situated non-tobacco user.

65. Iron Mountain's 2024 materials make the problem explicit. They state that a participant who missed the opportunity to update tobacco-use status during Open Enrollment must participate in lifestyle coaching sessions to remove the surcharge.

66. The same materials instruct the participant to complete three tobacco-cessation or other lifestyle-coaching sessions before March 31 of the following year and state that the participant will then have the surcharge "*removed going forward*."

67. The written materials therefore provide only for prospective removal of the surcharge. A participant who pays the surcharge during January, February, and March and then completes the identified alternative is told that the surcharge will be removed "going forward," but the materials do not state that the amounts already collected during those months will be reimbursed, credited, or otherwise returned.

68. The 2024 materials also state that, if the March 31 window has passed, a participant may still work with a coach at no cost and earn LiveWell points, but a participant who successfully quits can indicate non-tobacco status during Open Enrollment in the fall.

69. The regulatory defect after the March 31 deadline is independent of Iron Mountain's failure to provide the full annual reward. Once the March 31 coaching window closed, Iron Mountain's materials no longer identified participation in coaching or another activity-based alternative as a means of avoiding the Tobacco Surcharge. Instead, the materials stated that a participant who successfully quit tobacco use could identify as a non-tobacco user during the next Open Enrollment. By identifying successful cessation as the only route to non-tobacco status after the deadline while identifying no further reasonable alternative for a participant who continued to use tobacco, the materials describe a structure inconsistent with 29 C.F.R. § 2590.702(f)(4)(iii)-(iv), which requires a reasonable alternative to remain available to individuals who do not achieve the tobacco-free outcome.

70. The 2025 Benefits Details are similarly incomplete. They state that a participant who missed the opportunity to update tobacco status during Open Enrollment can participate in coaching by the end of Quarter 1 to be eligible to have the surcharge removed.

71. The 2025 materials do not state that completion of coaching entitles the participant to repayment of the amounts already paid during the Plan year, do not explain how any retroactive payment would be calculated, and do not identify a procedure for obtaining the full annual reward. Iron Mountain did not automatically reimburse participants for surcharge amounts collected earlier in the same Plan year after they completed the identified coaching alternative. The precise payroll and reimbursement practices are within Iron Mountain's exclusive possession and will be established through discovery.

72. Anderson's experience is consistent with the absence of a full-reward disclosure in earlier Plan years. Although she knew a cessation program existed, she believed avoiding the surcharge required quitting smoking and did not know of any retroactive right.

73. Hill likewise paid the surcharge during part of the Class Period without knowing of a tobacco-cessation program through which she could obtain the same financial treatment as a non-tobacco user.

74. On information and belief, to the extent the wording of Iron Mountain's participant materials varied between 2020 and 2023, Iron Mountain did not provide Plaintiffs and similarly situated participants with a clearly disclosed alternative that guaranteed the same full reward for the applicable Plan year without requiring successful tobacco cessation.

75. By describing only prospective surcharge removal, failing to disclose any mechanism for reimbursing or crediting amounts already collected, and, after stated deadlines, directing participants toward successful cessation and later attestation, Iron Mountain's written program materials fail to establish that participants are provided the full reward through a compliant reasonable alternative standard.

**E. Iron Mountain Failed to Provide the Required RAS Notice in All Plan Materials Describing the Tobacco Surcharge Program.**

76. The notice requirement for an outcome-based wellness program is not satisfied by placing partial information in one document or by making information available somewhere within a benefits platform. Under 29 C.F.R. § 2590.702(f)(4)(v), all plan materials describing the terms of the program must disclose the availability of a reasonable alternative standard, provide contact information for obtaining the alternative, and state that recommendations of an individual's personal physician will be accommodated.

77. Iron Mountain distributed multiple participant-facing materials that described operative terms of the Tobacco Surcharge Program. Those materials did substantially more than merely mention the existence of a wellness program. They instructed employees when tobacco attestations were required, identified the circumstances triggering the surcharge, stated the amount of the surcharge, described procedures for avoiding or removing the surcharge, and, in some instances, described Aetna coaching offered in connection with the surcharge.

78. Iron Mountain's 2024 Benefits Enrollment Checklist instructed participants that they were required to "[a]ctively update" their tobacco attestations each year during Open Enrollment "to

avoid the surcharges" and warned that participants who failed to act would pay the "defaulted surcharges for 2024." Despite describing those operative terms of the Tobacco Surcharge Program, the checklist did not inform tobacco users that a reasonable alternative standard was available through which they could obtain the same reward, did not identify how to request such an alternative, and did not state that recommendations of a participant's personal physician would be accommodated.

79. Iron Mountain's more detailed 2024 U.S. Benefits materials likewise described the Tobacco Surcharge in substantial detail. They identified the tobacco-use standard, the amount of the surcharge, the annual attestation requirement, the coaching requirement, the March 31 deadline, the prospective "removed going forward" consequence of completing coaching by that deadline, and the successful-cessation route described after the deadline. Although those materials supplied telephone numbers for Aetna coaching, they did not state that recommendations of a participant's personal physician would be accommodated and did not clearly disclose that a participant satisfying a reasonable alternative standard was entitled to the same full reward available to a participant who satisfied the initial tobacco-free standard.

80. Iron Mountain's 2025 Open Enrollment Checklist independently described operative terms of the Tobacco Surcharge Program. It instructed participants to confirm their tobacco attestations during the enrollment process to determine whether the 2025 surcharge applied and informed them that an employee or enrolled spouse or domestic partner who used tobacco or nicotine products would pay a $75-per-month surcharge. The checklist did not disclose that a tobacco user could qualify for the surcharge reward through a reasonable alternative standard and did not state that recommendations of the participant's personal physician would be accommodated.

81. Iron Mountain's 2025 Benefits Details provided still more information about the program. Those materials identified the $75 monthly employee surcharge, the separate $75 covered-spouse surcharge, the six-month tobacco-use standard, the Aetna Tobacco Cessation Program, and the ability of a participant who missed Open Enrollment to participate in coaching by the end of Quarter 1

to become eligible to have the surcharge removed. Yet those materials did not state that recommendations of a participant's personal physician would be accommodated and did not explain that satisfaction of a reasonable alternative standard entitled the participant to the same full reward for the Plan year, including the treatment of surcharge amounts already collected.

82. Iron Mountain also distributed a separate 2024 LiveWell wellness notice stating generally that an employee unable to participate in certain health-related activities or achieve certain health outcomes may be entitled to a reasonable accommodation or alternative standard and may contact Human Resources. That generic notice does not cure the deficiencies in the separate materials that actually describe the Tobacco Surcharge Program.

83. The LiveWell notice does not identify the Tobacco Surcharge, does not tell a tobacco user that the alternative-standard language applies to the Tobacco Surcharge, does not explain how satisfying an alternative entitles a participant to the same surcharge reward, and does not state that recommendations of the participant's personal physician will be accommodated in establishing a reasonable alternative standard. Moreover, the regulation requires the disclosure in *all plan materials describing the terms of the program*, not merely in a separate generalized wellness notice.

84. Plaintiffs' experiences are consistent with these disclosure failures. Anderson knew generally that a tobacco-cessation program existed but understood that avoiding the surcharge required quitting smoking; she did not know that participation in a lawful reasonable alternative could provide the same reward, did not know of any retroactive same-reward right, and did not know that recommendations of her personal physician would be accommodated. Hill did not know of a tobacco-cessation alternative or a physician-based reasonable alternative at all.

85. By repeatedly describing operative terms of the Tobacco Surcharge Program in participant-facing materials without providing the complete disclosures required by 29 C.F.R. § 2590.702(f)(4)(v), Iron Mountain failed to satisfy the notice requirement necessary to qualify for the wellness-program exception.

**F. Iron Mountain Acted in a Fiduciary Capacity in Administering the Program.**

86. Plaintiffs do not challenge the settlor decision to offer a wellness program or to design employee benefits in the abstract. They challenge Iron Mountain's administration of the Tobacco Surcharge Program during the Class Period, including discretionary decisions and communications made while serving as Plan Administrator and named fiduciary.

87. Those administrative functions include determining participant tobacco status for premium purposes, implementing payroll deductions, enforcing deadlines, determining whether coaching satisfies the alternative, deciding when the surcharge is removed, administering any reimbursement, and communicating the rights and procedures governing those determinations.

88. The Plan document expressly requires the Plan Administrator to notify eligible employees of premium-payment benefits and enrollment procedures and grants the Plan Administrator full discretion to make and enforce rules, prescribe forms, interpret the Plan, and determine eligibility and coverage.

89. Iron Mountain therefore exercised fiduciary authority when it administered the surcharge and the asserted reasonable alternative, decided what information participants would receive about their Plan rights, and controlled the assessment and removal of additional participant premium contributions.

90. Iron Mountain had an obligation to administer those functions loyally, prudently, and in accordance with ERISA. See 29 U.S.C. § 1104(a)(1).

91. A prudent fiduciary administering a health-contingent premium differential would review the program and the participant communications against the governing federal requirements, including the full-reward and notice provisions, and correct noncompliant procedures.

92. Iron Mountain failed to do so. Its written materials described only prospective surcharge removal for participants who timely completed coaching, directed continuing tobacco users after the March 31 deadline toward successful cessation rather than a continuing participation-based reasonable

alternative, and repeatedly described operative terms of the Tobacco Surcharge Program without providing the complete reasonable-alternative-standard disclosures required by federal law, including the physician-accommodation statement.

93. On information and belief, the surcharge also financially benefited Iron Mountain because the self-insured medical benefits are paid from Iron Mountain's general assets and the additional participant contributions reduce the net amount the Company otherwise must fund. That financial interest required heightened fidelity to the interests of participants when Iron Mountain exercised administrative discretion over the surcharge.

94. The exact amount of surcharge revenue collected, the accounting treatment of those amounts, and the extent to which they reduced Iron Mountain's own funding obligations are facts uniquely within Defendant's control and are appropriate subjects for discovery.

95. As a result of Defendant's conduct, Plaintiffs and the Class paid additional premiums they would not have been lawfully required to pay absent a program satisfying every requirement of the wellness-program exception.

## V. CLASS ACTION ALLEGATIONS

96. Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on behalf of themselves and a proposed nationwide Class consisting of:

> All participants and beneficiaries in the United States for whom a tobacco- or nicotine-use surcharge was paid or deducted in connection with medical coverage under The Iron Mountain Companies Welfare Plan at any time from six years before the filing of this Complaint through the date this action was filed.

97. Excluded from the Class are Defendant; Defendant's officers and directors to the extent they are sued or could be held individually liable for the conduct at issue; the Court and its staff; and any person who timely and validly opts out of any Rule 23(b)(3) class that may be certified.

98. The members of the Class are ascertainable from Iron Mountain's payroll, benefits-enrollment, and Plan-administration records, which identify the persons for whom the Tobacco Surcharge was assessed and the amounts and dates of the deductions.

99. The Class is sufficiently numerous that joinder is impracticable. The Plan has more than 11,000 active participants, the Tobacco Surcharge is a nationwide program, and, on information and belief, the Class includes at least hundreds of persons dispersed across multiple states.

100. There are questions of law and fact common to the Class because the claims arise from Iron Mountain's uniform administration of the Plan and Tobacco Surcharge Program.

a. Whether the Tobacco Surcharge requires a participant or beneficiary to pay a greater premium or contribution based on a health-status-related factor within the meaning of 29 U.S.C. § 1182(b)(1);

b. Whether Iron Mountain bears and can satisfy the requirements of the wellness-program exception for its Tobacco Surcharge Program;

c. Whether Iron Mountain made the full reward available to similarly situated tobacco users through a compliant reasonable alternative standard;

d. Whether Iron Mountain's participant-facing materials that describe the Tobacco Surcharge contain the disclosures required by 29 C.F.R. § 2590.702(f)(4)(v);

e. Whether Iron Mountain acted as a fiduciary when administering participant status, surcharge assessment, coaching eligibility, surcharge removal or reimbursement, and participant communications;

f. Whether Iron Mountain breached fiduciary duties of loyalty and prudence in administering the Tobacco Surcharge Program;

g. Whether Plaintiffs and the Class are entitled to restitution, equitable surcharge, disgorgement, a constructive trust, declaratory relief concerning Defendant's conduct

during the Class Period, plan-wide relief, interest, or other appropriate retrospective equitable relief; and

h. The proper method for determining the amount of surcharge payments to be returned to Plaintiffs and the Class.

101. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were Plan participants for whom Iron Mountain assessed and collected the same type of Tobacco Surcharge challenged on behalf of the Class, and their claims arise from the same legal duties and common programmatic practices.

102. Anderson is particularly typical of participants who were aware of a cessation program but were not informed that an alternative could provide the same full reward without successful cessation or that physician recommendations would be accommodated.

103. Hill is particularly typical of participants who paid the Tobacco Surcharge without receiving participant-facing information sufficient to make them aware of a reasonable alternative and physician-accommodation process.

104. Plaintiffs will fairly and adequately represent the Class. Their interests are aligned with those of the Class, they seek the same relief arising from the same conduct, and they have retained counsel experienced in ERISA and class-action litigation.

105. Certification is appropriate under Rule 23(b)(1)(B) for claims seeking relief on behalf of the Plan under ERISA § 502(a)(2), because adjudication of those claims necessarily affects the Plan as a whole and could, as a practical matter, dispose of or substantially impair absent participants' interests in the Plan-wide relief sought.

106. To the extent monetary relief is pursued on a classwide basis under Rule 23(b)(3), common questions predominate over individual issues because liability turns on the uniform Plan terms, surcharge rules, and participant communications, while individual amounts can be calculated mechanically from Defendant's records.

107. A class action is superior to individual litigation because the surcharge amounts paid by many individual participants are modest compared with the cost of litigating complex ERISA issues, the relevant evidence is centralized in Defendant's records, and uniform adjudication will promote efficiency and consistent treatment.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

108. Plaintiffs assert statutory ERISA anti-discrimination and fiduciary-duty claims, not claims for medical benefits denied under the terms of the Plan.

109. The 2023 Wrap Summary Plan Description states that, before pursuing "legal action for benefits under the Plan," a participant must exhaust the Plan's claim, review, and appeal procedures. Plaintiffs do not seek payment of a denied medical claim or another benefit due under the Plan's benefit terms.

110. The challenged conduct instead concerns whether Iron Mountain's uniform Tobacco Surcharge Program complies with federal law and whether Iron Mountain breached fiduciary duties in administering that program.

111. The Plan's benefit-claim procedures are not designed to adjudicate the legality of Defendant's uniform surcharge structure or provide plan-wide statutory and fiduciary relief.

112. In any event, requiring individual exhaustion would be futile because Iron Mountain is the Plan Administrator responsible for the challenged administration and communications and would be asked to decide the legality of its own uniform practices.

113. No deference is owed to a Plan Administrator's interpretation of the federal anti-discrimination requirements at issue here. Plaintiffs therefore have satisfied any applicable exhaustion requirement or are excused from exhaustion.

**FIRST CLAIM FOR RELIEF**
**ERISA Statutory Violation - Unlawful Tobacco Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Provide a Compliant Reasonable Alternative Standard and Full Reward**

114. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

115. Iron Mountain imposed an additional premium contribution on Plaintiffs and Class members based on tobacco or nicotine status in connection with enrollment or continued enrollment in Plan medical coverage.

116. The Tobacco Surcharge is prohibited by 29 U.S.C. § 1182(b)(1) unless Iron Mountain satisfies every requirement necessary for the wellness-program exception.

117. Iron Mountain did not provide a compliant reasonable alternative standard through which similarly situated tobacco users could obtain the full reward because, among other things:

a. the 2024 materials stated that participants who completed qualifying coaching by the stated deadline would have the surcharge removed "going forward," but did not state that surcharge amounts already collected during the Plan year would be reimbursed, credited, or otherwise returned;

b. after the March 31 deadline, the 2024 materials no longer provided a participation-based reasonable alternative standard through which a continuing tobacco user could avoid the surcharge, but instead conditioned the only identified route to non-tobacco status on successfully quitting tobacco and attesting to that outcome during a later Open Enrollment, without identifying a further reasonable alternative for participants who continued to use tobacco;

c. the 2025 materials stated that coaching by the end of Quarter 1 could make a participant eligible for surcharge removal but did not provide a mechanism or promise for reimbursement of amounts already collected during the Plan year; and

d. Plaintiffs were not informed during their own surcharge-paying periods of a reasonable alternative that guaranteed the same full financial reward for the Plan year without requiring successful tobacco cessation.

118. Iron Mountain therefore cannot establish the full-reward and reasonable-alternative requirements of 42 U.S.C. § 300gg-4(j)(3)(D) and 29 C.F.R. § 2590.702(f)(4)(iv).

119. Because Iron Mountain cannot establish the requirements for the wellness-program exception, the Tobacco Surcharge unlawfully discriminates based on a health-status-related factor in violation of 29 U.S.C. § 1182(b).

120. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes Plaintiffs and Class members to obtain appropriate equitable relief to redress this statutory violation and enforce ERISA.

121. Plaintiffs and Class members are entitled to appropriate equitable relief, including restitution or equitable surcharge measured by unlawful surcharge payments, disgorgement to the extent appropriate, declaratory relief concerning the legality of surcharges imposed during the Class Period, interest, and such other retrospective equitable relief as is necessary to redress the statutory violation.

**SECOND CLAIM FOR RELIEF**
**ERISA Statutory Violation - Unlawful Tobacco Surcharge**
**ERISA Section 502(a)(3)**
**Failure to Give Required Notice in All Plan Materials**
**Describing the Tobacco Surcharge Program**

122. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

123. Iron Mountain imposed the Tobacco Surcharge as an outcome-based health-contingent wellness program and distributed multiple plan materials describing the terms of that program, including materials addressing tobacco-use attestations, circumstances triggering the surcharge, surcharge amounts, coaching opportunities, deadlines, and procedures affecting surcharge removal.

124. Under 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v), plan materials describing the terms of an outcome-based wellness program must disclose the availability of a

reasonable alternative standard. The regulation further requires those materials to provide contact information for obtaining the alternative and to state that recommendations of an individual's personal physician will be accommodated.

125. Iron Mountain's 2024 Benefits Enrollment Checklist described the annual tobacco-attestation requirement and warned participants that failure to update their status would result in payment of the defaulted surcharge, but did not disclose that a tobacco user could qualify for the reward through a reasonable alternative standard and did not provide the required physician-accommodation disclosure.

126. Iron Mountain's detailed 2024 U.S. Benefits materials described the Tobacco Surcharge, its amount, the tobacco-use standard, coaching, the March 31 deadline, prospective surcharge removal, and the subsequent successful-cessation route. Those materials nevertheless failed to state that recommendations of a participant's personal physician would be accommodated and failed to clearly disclose a reasonable alternative that entitled a participant to the same full reward for the Plan year.

127. Iron Mountain's 2025 Open Enrollment Checklist separately described the tobacco-attestation requirement and the $75-per-month surcharge applicable to tobacco or nicotine users, but did not disclose the availability of a reasonable alternative standard for obtaining the surcharge reward and did not contain the physician-accommodation statement.

128. Iron Mountain's 2025 Benefits Details described the amount and triggering terms of the surcharge, the Aetna Tobacco Cessation Program, and Quarter 1 coaching as a means of becoming eligible for surcharge removal. Those materials still failed to state that recommendations of an individual's personal physician would be accommodated and failed to explain that satisfaction of a reasonable alternative standard entitled the participant to the same full financial reward for the Plan year.

129. The generic LiveWell notice contained in Iron Mountain's separate 2024 annual regulatory materials does not cure these violations. It does not identify the Tobacco Surcharge, does

not explain that its alternative-standard language applies to the Tobacco Surcharge Program, does not describe how a tobacco user can obtain the same full surcharge reward, and does not include the required personal-physician recommendation language. In any event, a separate generalized notice cannot satisfy a regulation requiring disclosure in all plan materials that describe the terms of the challenged program.

130. These disclosure failures affected Plaintiffs. Anderson understood the program as requiring cessation and did not know of a participation-based same-reward alternative, retroactive same-reward right, or physician accommodation. Hill did not know that a tobacco-cessation or physician-based alternative was available through which she could obtain the same reward as a non-tobacco user.

131. Because Iron Mountain failed to provide the disclosures required by 42 U.S.C. § 300gg-4(j)(3)(E) and 29 C.F.R. § 2590.702(f)(4)(v) in all plan materials describing the Tobacco Surcharge Program, Iron Mountain cannot satisfy every requirement of the wellness-program exception. The Tobacco Surcharge therefore violates 29 U.S.C. § 1182(b), and Plaintiffs and the Class are entitled under ERISA § 502(a)(3) to appropriate retrospective equitable relief, including restitution or equitable surcharge measured by unlawful surcharge payments, declaratory relief concerning Defendant's conduct during the Class Period, and interest.

**THIRD CLAIM FOR RELIEF**
**ERISA Breach of Fiduciary Duty**
**ERISA Sections 502(a)(2) and 502(a)(3)**
**Breach of Duties of Loyalty and Prudence**

132. Plaintiffs reallege and incorporate the preceding allegations as if fully set forth herein.

133. At all relevant times, Iron Mountain was the Plan Administrator and named fiduciary and was a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A) to the extent it exercised discretionary authority or control over Plan administration, management, and assets.

134. Iron Mountain exercised discretionary fiduciary authority in administering tobacco-status determinations, surcharge assessment and payroll implementation, the coaching alternative, surcharge removal or reimbursement, and participant communications concerning those Plan-administration functions.

135. ERISA required Iron Mountain, when acting as fiduciary, to discharge its duties solely in the interests of participants and beneficiaries, for the exclusive purpose of providing benefits and defraying reasonable Plan expenses, with the care, skill, prudence, and diligence of a prudent fiduciary, and in accordance with governing Plan documents insofar as consistent with ERISA. 29 U.S.C. § 1104(a)(1).

136. Iron Mountain breached those duties by administering a health-status-based surcharge program that did not make the full reward available through a compliant reasonable alternative and did not provide the disclosures required for the wellness-program exception.

137. Iron Mountain further breached its duties by failing to conduct a prudent review of the Tobacco Surcharge Program and its participant communications against the governing statutory and regulatory requirements and by allowing the same deficiencies to persist over multiple Plan years.

138. The Plan's governing funding provisions establish a direct relationship between employee payroll contributions and Iron Mountain's employer funding obligation. Under Article VIII, employee contributions are collected from employee compensation and transmitted to the applicable Plan benefits, while Iron Mountain's employer contributions are paid from its general assets.

139. The Tobacco Surcharge increased the amount collected from Plaintiffs and Class members as employee contributions associated with medical coverage. On information and belief, Iron Mountain used or applied those additional participant contributions in connection with funding the Plan's self-insured medical benefits and thereby reduced the amount Iron Mountain otherwise would have paid from its general assets.

140. To the extent Tobacco Surcharge deductions constituted or became assets of the Plan, were required to be transmitted for the benefit of the Plan, or otherwise were subject to Iron Mountain's fiduciary control after collection from participant compensation, Iron Mountain was required to administer and use those amounts solely in accordance with ERISA and the Plan. Iron Mountain could not use Plan assets for its own benefit or to satisfy obligations that otherwise belonged to Iron Mountain.

141. On information and belief, to the extent Iron Mountain retained, controlled, or used such participant contributions for its own benefit—including by applying them to reduce amounts it otherwise would have funded—the Plan suffered losses and/or Iron Mountain obtained profits, savings, or other financial benefits attributable to its use or control of those amounts. Under ERISA § 409, any such Plan losses and profits are subject to restoration.

142. The precise point at which the Tobacco Surcharge deductions were transferred or deemed Plan assets, the accounts into which they were deposited, the manner in which they were applied to Plan expenses, the corresponding effect on Iron Mountain's employer contributions, and any profits or savings generated through Iron Mountain's use or control of those amounts are matters within Defendant's exclusive knowledge and control and are appropriate subjects for discovery.

143. Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Plaintiffs are authorized to seek relief on behalf of the Plan for any losses to the Plan and profits obtained through the use of Plan assets that are subject to restoration under 29 U.S.C. § 1109.

144. To the extent appropriate and not duplicative of relief available under § 502(a)(2), ERISA § 502(a)(3) also authorizes Plaintiffs and the Class to obtain equitable relief necessary to redress fiduciary breaches, including restitution, equitable surcharge, disgorgement, constructive trust, accounting, and declaratory relief.

145. Iron Mountain is therefore liable for all appropriate plan-wide and equitable relief necessary to restore losses or profits attributable to the fiduciary breaches and to place the Plan, Plaintiffs, and the Class in the position they would have occupied absent those breaches.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and on behalf of the Class and grant the following relief:

A. Certify the proposed Class under Federal Rule of Civil Procedure 23 and appoint Plaintiffs as Class Representatives and their counsel as Class Counsel;

B. Declare that Iron Mountain's Tobacco Surcharge Program, as administered during the Class Period and to the extent it failed the reasonable-alternative-standard, full-reward, and notice requirements alleged herein, violated ERISA § 702, 29 U.S.C. § 1182, and its implementing regulations;

C. Require Iron Mountain to restore or return, through restitution, equitable surcharge, or other appropriate relief, the Tobacco Surcharge amounts paid or deducted during the Class Period, together with prejudgment interest as permitted by law;

D. Order an accounting sufficient to determine the surcharge amounts collected, the persons for whom they were collected, the disposition of those amounts, and any profits, savings, or other benefits obtained by Iron Mountain through the challenged fiduciary conduct;

E. Require Iron Mountain, to the extent authorized by 29 U.S.C. § 1109 and other applicable provisions, to make good to the Plan any losses and restore to the Plan any profits made through fiduciary breaches;

F. Impose a constructive trust, equitable lien, disgorgement, or other equitable remedy over traceable surcharge proceeds or profits to the extent the evidence and law warrant such relief;

G. Award Plaintiffs reasonable attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

H. Grant such other and further legal or equitable relief as the Court deems just and proper.

Date: August 28, 2026

Respectfully submitted,

SANDRA K. ANDERSON and HALEY HILL, individually, and as a representative of a Class of Participants and Beneficiaries of The Iron Mountain Companies Welfare Plan,

*/s/ Jonathan M. Feigenbaum*
Jonathan M. Feigenbaum
BBO #546686
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 357-9700
jonathan@erisaattorneys.com

**WALCHESKE & LUZI, LLC**

Paul M. Secunda (*pro hac vice* motion pending)
1200 N. Mayfair Rd., Suite 270
Wauwatosa, Wisconsin 53226
Telephone: (414) 828-2372
psecunda@walcheskeluzi.com

*Attorneys for Plaintiffs and Proposed Class*